Elhulu v. Alshalabi, 2021 NCBC 28.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

MARWAN ELHULU; KHALID
ALNABULSI; and MOHAMMED
SAQQA,

Plaintiffs,

v.

FADEL ALSHALABI; OMNI
HOLDING GROUP, LLC; and
CRESTAR LABS, LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 12827

**ORDER AND OPINION
ON DEFENDANTS'
MOTIONS TO DISMISS**

1.    This Order and Opinion addresses two motions to dismiss filed by the defendants in this action.  For the following reasons, the Court **GRANTS in part** and **DENIES in part** each motion.

*The Law Office of William L. Sitton, Jr., by William L. Sitton, Jr., for Plaintiffs Marwan Elhulu, Khalid Alnabulsi, and Mohammed Saqqa.*

*Parry Law, PLLC, by Jonah A. Garson and K. Alan Parry, for Defendants Fadel Alshalabi and Crestar Labs, LLC.*

*Jerry Meek, PLLC, by Gerald F. Meek, for Defendant Omni Holding Group, LLC.*

Conrad, Judge.

I.
BACKGROUND

2.    The following background assumes that the allegations of the complaint are true.

3.    Marwan Elhulu, Khalid Alnabulsi, and Mohammed Saqqa (together, "Plaintiffs") claim that they were duped by Fadel Alshalabi to invest in his medical

laboratory business. In 2016, Alshalabi began pitching them a plan to expand his business through a company called Omni Holding Group, LLC ("Omni"). (*See* Compl. ¶ 14, ECF No. 3.) Alshalabi allegedly made a host of promises, including that their "short-term" investments in Omni would earn substantial returns. (Compl. ¶¶ 15, 18, 19.) For example, at a meeting in January 2016, Alshalabi offered Plaintiffs and others the opportunity to invest in Omni at $80,000 per share. (Compl. ¶ 15(a).) He assured Plaintiffs that their entire investment would be repaid by the end of the year and, moreover, that they would begin receiving distributions[1] of $15,000 per share within six months. (*See* Compl. ¶ 15(b), (c).) Two months later, Alshalabi promised that, for an additional $20,000 per share, Plaintiffs could also acquire an interest in two other laboratory companies, Crestar Labs, LLC ("Crestar") and Clio Laboratory, LLC ("Clio"). (*See* Compl. ¶ 15(d), (e).) According to Plaintiffs, Alshalabi told them "that the risk of loss was basically nonexistent and, at worst, no more than five percent." (Compl. ¶ 15(f).)

4. So Plaintiffs invested. Elhulu invested $500,000, and Alnabulsi and Saqqa each invested $200,000. (*See* Compl. ¶ 16.) Their investments were supposed to procure not only membership in Omni but also an interest in Crestar. (*See* Compl. ¶¶ 15(e), 17.) All told, Alshalabi allegedly raised $8.8 million from Plaintiffs and others that year. (Compl. ¶ 32.) He then allegedly promised Plaintiffs that they

---

[1] Plaintiffs' complaint and briefs oscillate between the term "dividend" and "distribution," although context indicates that both terms mean the same thing. For consistency, the Court will use the term "distribution" throughout.

would receive a distribution by the end of the year and that their investments would be repaid in full by early 2017. (Compl. ¶ 18.)

5.   According to the complaint, Alshalabi failed to live up to his promises. To date, Plaintiffs have received only two distributions: one in April 2017 and another in January 2018. (Compl. ¶ 19.) They have not received the full repayment of their initial investments, let alone the regular returns they expected. (*See* Compl. ¶¶ 19, 26, 33, 36–38.)

6.   Since investing, Plaintiffs have asked many times for documentation to show how their funds have been used and to clarify their interests in the various entities at play. (*See* Compl. ¶ 25.) But these requests were met with delays, vague assurances, and then ultimately silence. At first, Alshalabi convened meetings with Plaintiffs and other investors, promising that distributions and repayments were imminent. (*See, e.g.*, Compl. ¶¶ 26, 36, Ex. 4.) At one point, he told them that he had used some of the funds to invest in Clio, but then he backtracked and said that they no longer had any ownership interest in that company. (*See* Compl. ¶¶ 27, 30.) By mid-2018, Alshalabi stopped meeting and communicating with Plaintiffs. (Compl. ¶ 35.)

7.   Plaintiffs state that they have made "repeated attempts" to account for their investments. (Compl. ¶ 34.) Eventually, they obtained legal counsel and made a written demand on Alshalabi for financial statements and other documents for each entity in which they might own an interest. (*See* Compl. ¶¶ 10, 31, Ex. 1.) Alshalabi, Omni, and Crestar ignored the request. (Compl. ¶ 31.)

8.      Now, Plaintiffs have brought this suit against Alshalabi, Omni, and Crestar (together, "Defendants"). They seek a declaratory judgment to ascertain the extent of their interests in Omni, Crestar, and Clio; to declare the validity of a document that may be Omni's operating agreement; and to ascertain what Defendants did with Plaintiffs' funds and whether Alshalabi has personally profited from them. (*See* Compl. ¶¶ 44–49, Prayer for Relief.) They have also brought claims for accounting, breach of contract, unfair or deceptive trade practices, and breach of fiduciary duty. (Compl. ¶¶ 50–77.)

9.      Omni has filed a motion to dismiss, (ECF No. 9), and Alshalabi and Crestar have filed a joint motion to dismiss, (ECF No. 11). The motions have been fully briefed, and the Court held a hearing on 4 March 2020. The motions are now ripe for resolution.

## II.
## LEGAL STANDARD

10.     Defendants have moved to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the North Carolina Rules of Civil Procedure.

11.     Rule 12(b)(1) permits dismissal for lack of subject matter jurisdiction. Subject matter jurisdiction is the "indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act." *In re T.R.P.*, 360 N.C. 588, 590 (2006). Lack of subject matter jurisdiction necessitates dismissal at any stage of litigation. *See* N.C. R. Civ. P. 12(b)(1), 12(h)(3); *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *13 (N.C. Super. Ct. Oct. 2, 2017), *aff'd*, 371 N.C.

579 (2018). When assessing its jurisdiction, the Court "may consider matters outside the pleadings." *Harris v. Matthews*, 361 N.C. 265, 271 (2007) (citations omitted).

12. Other issues before the Court are raised under Rule 12(b)(6) for failure to state a claim. A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

13. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019); *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51 (2016). But the Court need not accept as true any "conclusions of law or unwarranted deductions of fact." *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citations and quotation marks omitted). The Court also may consider documents "attached to and incorporated within [the] complaint" but may not consider matters outside the complaint. *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *8 (N.C. Super. Ct. Apr. 25, 2018) (citation and quotation marks omitted).

14. Finally, Rule 12(b)(7) permits dismissal for failure to join a necessary party. "Necessary parties must be joined in an action. . . . A necessary party is one who is so

vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence." *Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 438–39 (2000) (citations and quotation marks omitted); *see also* N.C. R. Civ. P. 19(a); *Long v. City of Charlotte*, 306 N.C. 187, 212 (1982). But dismissal under Rule 12(b)(7) is proper only when the necessary party cannot be joined. *See State ex rel. Regan v. WASCO, LLC*, 269 N.C. App. 292, 305 (2020), *review denied*, 374 N.C. 744, 2020 N.C. LEXIS 774. If a necessary party has not been joined but can be joined, the Court must order the party "summoned to appear in the action." *Id.* (quoting N.C. R. Civ. P. 19(b)); *see also* N.C. R. Civ. P. 21; *Long*, 306 N.C. at 212–13.

## III.
## ANALYSIS

15.     Defendants have moved to dismiss all claims on various bases. Several arguments require no analysis. In their opposition briefs, Plaintiffs do not contest the dismissal of their claim for breach of fiduciary duty against Omni and their claims for breach of contract, unfair or deceptive trade practices, and breach of fiduciary duty against Crestar. The Court therefore dismisses these claims without prejudice.

16.     One other prefatory matter deserves mention. At times, the briefs on both sides exhibit confusion about the nature and scope of several claims, partly due to Plaintiffs' candid uncertainty about some matters. (*See, e.g.*, Omni Br. in Supp. 3, 7, 11–12, 16, ECF No. 10; Opp'n to Omni MTD 4–6, 8–11, ECF No. 18; Omni Reply Br. 4–6, ECF No. 24; Alshalabi & Crestar Br. in Supp. 5–6, ECF No. 12; Opp'n to Alshalabi & Crestar MTD 3–4, 7, ECF No. 19.) The Court has done its best to

understand the arguments and allegations at issue and to construe the complaint liberally without expanding Plaintiffs' claims "beyond what is fairly alleged." *VanFleet v. City of Hickory*, 2020 NCBC LEXIS 40, at \*8 (N.C. Super. Ct. Mar. 30, 2020).

### A. Declaratory Judgment

17.    The Declaratory Judgment Act broadly authorizes courts "to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.C.G.S. § 1-253.  A motion to dismiss a claim for declaratory judgment "is seldom . . . appropriate . . .  and will not be allowed simply because the plaintiff may not be able to prevail." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439 (1974). Early dismissal "is allowed only when the record clearly shows that there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." *Id.* (citations omitted).

18.    As best the Court can tell, Plaintiffs seek four declarations: (1) "the extent of Plaintiffs' ownership in and to" Crestar, Omni, and Clio; (2) "what use and application" Defendants made of Plaintiffs' investments, including Plaintiffs' "purchase of shares and membership in Omni"; (3) whether "Omni's purported Operating Agreement [is] binding and enforceable"; and (4) the extent to which Alshalabi "has profited personally from diverting Plaintiffs' contributions for his own use and benefit."  (Compl. ¶¶ 45–47, Prayer for Relief.)

### 1. *Declaration 1: The extent of Plaintiffs' ownership*

19.    In the first declaration, Plaintiffs seek to ascertain the extent of their rights in Omni, Crestar, and Clio.  Defendants argue that this request must be dismissed

under Rule 12(b)(7) for failure to join necessary parties.  (*See* Omni Br. in Supp. 5–7.[2])  In a declaratory-judgment action, "all persons shall be made parties who have or claim any interest which would be affected by the declaration."  N.C.G.S. § 1-260.  Defendants contend that Omni's and Crestar's other members and Clio are all necessary parties for this declaration as to each respective entity.

20.     First, Clio is a necessary party.  Simply put, any declaration about Plaintiffs' rights in Clio necessarily and fundamentally implicates Clio itself.  *See* N.C.G.S. § 1-260; N.C. R. Civ. P. 19(a); *Karner*, 351 N.C. at 438–39.  Thus, Plaintiffs must join Clio as a defendant.  If Plaintiffs do not or if Clio cannot be joined, the Court will then dismiss the request to declare the extent of their interests in Clio.  *See* N.C. R. Civ. P. 19(b), 21; *Long*, 306 N.C. at 212–13; *State ex rel. Regan*, 269 N.C. App. at 305.

21.     Next, based on the current record, the Court cannot say whether the entities' other members are necessary parties for the purpose of this declaration.  This Court has recognized that "[a]ny declaration invalidating an operating agreement or altering the LLC's membership under the operating agreement would, 'as a practical matter,' adversely affect the rights of [the LLC's] members," making the members necessary parties.  *Azure Dolphin*, 2017 NCBC LEXIS 90, at *21 (quoting *N.C. Monroe Constr. Co. v. Guilford Cnty. Bd. of Educ.*, 278 N.C. 633, 640 (1971)); *see also Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *10–11 (N.C. Super. Ct. Aug. 7, 2017) (noting that because an LLC "is primarily

---

[2] Alshalabi and Crestar have joined several of Omni's arguments but do not repeat those arguments in their brief.  (*See* Alshalabi & Crestar Br. in Supp. 10–11.)  For simplicity, the Court cites only to Omni's brief on those arguments but attributes the arguments to all Defendants as appropriate.

a creature of contract," the "rights and duties" of interest holders "are ordinarily governed by the company's operating agreement" (citations and quotation marks omitted)).

22.  At this stage, it is unclear what the effect of a declaration regarding Plaintiffs' rights in Omni, Crestar, and Clio would be on the entities' other members. The entities' operating agreements, if they exist, are not in the record,[3] so it is unclear whether Plaintiffs' purported interests are governed by contract or by default statutory rules.  And although the complaint suggests that each entity has additional members, it includes no allegations as to the number or identity of those members. Nor have Defendants offered evidence on the subject.  *See Harty v. Spring Valley Marketplace, LLC*, No. 15-CV-8190, 2017 U.S. Dist. LEXIS 3418, at \*2 n.2 (S.D.N.Y. Jan. 9, 2017) (observing that courts may consider matters outside the pleadings on a Rule 12(b)(7) motion).  It would be "premature to address the need to include" an unknown number of unnamed members on such a blank record.  *Blacksmith Invs., LLC v. Cives Steel Co.*, 228 F.R.D. 66, 74 (D. Mass. 2005) (R. & R.) (denying Rule 12(b)(7) motion without prejudice), *R. & R. adopted*, No. 04-10369, 2005 U.S. Dist. LEXIS 18896 (D. Mass. Mar. 17, 2005).  Defendants may renew their objection later and on a more complete record because a defense of failure to join a necessary party may be made at any time before a verdict.  *See* N.C. R. Civ. P. 12(h)(2); *Roybal v. Raulli*, 266 N.C. App. 318, 329 (2019).

---

[3] As discussed below, a document purporting to be Omni's operating agreement is attached to the complaint, but the parties agree that it is not the governing document.

23. Crestar also argues that Plaintiffs lack standing. To maintain standing in a declaratory-judgment action, the plaintiff must be "one who benefits from or is harmed by the outcome of the case and by substantive law has the legal right to enforce the claim in question." *Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 824 (2005) (citing *Energy Invs. Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337 (2000)); *see also Comm. to Elect Dan Forest v. Emps. Pol. Action Comm. (EMPAC)*, 2021-NCSC-6, ¶ 82. Here, Crestar argues only that the allegations in the complaint are inadequate to support Plaintiffs' standing. Thus, the Court limits its analysis to the pleadings and "must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." *Munger v. State*, 202 N.C. App. 404, 410 (2010) (citation and quotation marks omitted).

24. As Crestar reads the complaint, Plaintiffs allege that they are members of Omni alone and do not allege any direct relationship with Crestar. (*See* Alshalabi & Crestar Br. in Supp. 5–6.) It is true that Plaintiffs claim to be members of Omni, (*see, e.g.*, Compl. ¶¶ 15–17, 20, 23), but the complaint goes further. It alleges that along with purchasing shares in Omni, "[e]ach Plaintiff opted to contribute an additional $20,000 per [Omni] share so that each would own an interest in the [Crestar] and [Clio] labs, as evidenced by a membership interest in the holding company, Omni." (Compl. ¶ 15(e).) It also alleges that Plaintiffs have "interests . . . in Crestar Labs in Tennessee and North Carolina." (Compl. ¶ 27.)

25. Liberally construed, the complaint advances a theory that Plaintiffs are direct owners of Crestar (in addition to Omni) through their additional $20,000 per

share investment. In other words, Plaintiffs have alleged that they have a direct interest in Crestar and that the full extent of that interest is unclear and disputed. (*See, e.g.*, Compl. ¶¶ 15(e), 27, 45.) That is sufficient to allege a controversy between Plaintiffs and Crestar, meeting the standing requirement for a declaratory judgment.

26. The Court therefore grants Defendants' motions to the extent they seek joinder of Clio as a necessary party but otherwise denies the motions to dismiss the first requested declaration.

**2. _Declarations 2 & 4: Defendants' use and application of Plaintiffs' funds & Alshalabi's personal profit_**

27. In the second and fourth declarations, Plaintiffs ask the Court to declare "what use and application" Defendants made "of Plaintiffs' purchase of shares and membership in Omni" and "what extent [Alshalabi] has profited personally from" Plaintiffs' investments. (Compl. ¶ 46, Prayer for Relief.) Defendants argue that these two declarations are improper because they involve pure questions of fact. (*See* Omni Br. in Supp. 4.) The Court agrees. Here, Plaintiffs have not asked the Court to ascertain the *legal effect* of Defendants' use of Plaintiffs' funds or of Alshalabi's alleged personal profit, but only *what* Defendants did with Plaintiffs' funds and *what* personal profit Alshalabi made. Those are factual, not legal, questions. As such, they are not suitable for a declaratory-judgment action. *See Prudential Ins. Co. of Am. v. Powell*, 217 N.C. 495, 500 (1940) (holding that "proceedings may not be maintained under the [Declaratory Judgment Act] to present issues of fact only"); *Strickland v. Town of Aberdeen*, 124 N.C. App. 430, 432 (1996) (same). The Court therefore grants

Defendants' motions to dismiss the second and fourth requests for declaratory judgment.

### 3. *Declaration 3: The enforceability of Omni's purported operating agreement*

28. In the third declaration, Plaintiffs ask the Court to declare whether "Omni's purported Operating Agreement [is] binding and enforceable." (Compl. ¶ 47, Prayer for Relief.) This "purported Operating Agreement" refers to Exhibit 3 of the complaint, which is a document bearing the title "Operating Agreement of Omni Holding Group, LLC." (Compl. Ex. 3.) Whether the complaint alleges an actual, genuine controversy regarding the validity of this document is doubtful: Plaintiffs contend that Exhibit 3 is "defective" because it lacks signatures and is missing paragraphs, but there is no clear allegation that Omni (or any other party) stands behind its validity. (*See* Compl. ¶¶ 24, 47.)

29. If a genuine controversy ever existed, it is now moot. At the hearing, Omni's counsel represented that Exhibit 3 is not its governing operating agreement. Given Omni's concession, there is no actual controversy regarding Exhibit 3: both sides agree it is not the operative document. Because the third request for declaratory judgment is moot, it must be dismissed. *See Emerson v. Cape Fear Country Club, Inc.*, 259 N.C. App. 755, 764 (2018) (stating that "the resolution of a moot question is one that would have no practical effect on the controversy" (citation and quotation marks omitted)); *Pearson v. Martin*, 319 N.C. 449, 451 (1987) ("Under the Declaratory Judgment Act, jurisdiction does not extend to questions that are altogether moot.").

30. To be clear, this does not mean that Omni has no operating agreement. According to counsel, Omni has another document that it contends is the company's

governing operating agreement. It appears that Plaintiffs have requested a copy of the document. If Plaintiffs contest its validity after receiving and reviewing it, they may seek leave to amend the complaint to request a declaration of invalidity at the appropriate time.

### B. Breach of Contract

31. Next is Plaintiffs' claim for breach of contract against Omni and Alshalabi. As an initial matter, there is substantial confusion over which agreement(s) and conduct form the basis of this claim. Liberally construed, the complaint seems to allege breaches of three purported agreements: (1) the series of promises Alshalabi made that Omni and Crestar would repay Plaintiffs' initial investment and make scheduled distributions, (Compl. ¶¶ 54–60), (2) a requirement in the operating agreement to disclose financial information, (Compl. ¶ 61), and (3) an agreement to account to Plaintiffs for their investment in Clio, (Compl. ¶ 62).

32. At the hearing, Plaintiffs' counsel asserted that the claim is premised on a fourth theory: breach of an unidentified provision in Omni's operating agreement that purportedly requires it to make distributions. That breach, however, is not alleged in the complaint and therefore cannot be a basis for the claim. *See VanFleet*, 2020 NCBC LEXIS 40, at *9–10 ("No such claim appears in the amended complaint, and the Court therefore does not consider the argument." (citations omitted)).

33. Omni and Alshalabi have not challenged the second and third alleged breaches of contract. (*See* Omni Br. in Supp. 10–12; Omni Reply Br. 4–6; Alshalabi & Crestar Br. in Supp. 11; Alshalabi & Crestar Reply Br. 6, ECF No. 25.) The Court

therefore expresses no opinion on whether the complaint adequately pleads a claim for either alleged breach.

34.   That leaves the first alleged breach.  Omni and Alshalabi raise a statute of limitations challenge.  (*See* Omni Br. in Supp. 10–12.)  They argue that the claim accrued at the latest in May 2017, meaning the three-year statute of limitations expired at the end of May 2020.  *See* N.C.G.S. § 1-52(1).  This action is therefore time-barred, they contend, because it was commenced in September 2020.

35.   A statute of limitations "may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred."  *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994) (citations omitted).  Under the discovery rule, the accrual of the limitations period does not necessarily begin at the time of the breach, but at the time the plaintiff knew or should have known of the breach.  *See Chisum v. Campagna*, 2021-NCSC-7, ¶¶ 32–36 (applying discovery rule to claim for breach of contract).

36.   Here, Plaintiffs allege that they did not know of the breach—that is, that Defendants were not going to make any distributions at all—until June 2018.  (*See* Compl. ¶ 59.)  Plaintiffs filed suit a little more than two years after the alleged discovery, well within the three-year limitations period.  Perhaps Plaintiffs should have reasonably known of the breach earlier, "[b]ut what Plaintiffs should have known is a fact-intensive question not suited to a Rule 12(b)(6) motion."  *Inhold, LLC v. PureShield, Inc.*, 2020 NCBC LEXIS 107, at *14 (N.C. Super. Ct. Sept. 22, 2020)

(denying motion to dismiss); *see also Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 486 (2004).

37. Taking these allegations as true and drawing all inferences in Plaintiffs' favor, the Court cannot conclude from the face of the complaint that the claim is time-barred. The Court therefore denies Omni's and Alshalabi's motions to dismiss the breach of contract claim on statute of limitations grounds. This is without prejudice to their revisiting the statute of limitations argument, if pleaded as an affirmative defense, at a later stage.

C. Unfair or Deceptive Trade Practices

38. One of the essential elements of a claim for unfair or deceptive trade practices is that the conduct at issue was "in or affecting commerce." N.C.G.S. § 75-1.1(a); *see also HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592 (1991). Omni and Alshalabi argue that none of the alleged misconduct meets this element. (*See* Omni Br. in Supp. 13–16; Alshalabi & Crestar Br. in Supp. 11–12.) The Court agrees.

39. At bottom, all of the conduct alleged in the complaint relates to Plaintiffs' investments in one or more LLCs, disputes about the nonpayment of distributions, a lack of transparency in company affairs, and the ensuing fallout between Omni's members and its manager. These actions and events all constitute securities transactions or internal company affairs, neither of which satisfy the "in or affecting commerce" element. *See HAJMM*, 328 N.C. at 594 (stating that securities transactions are acts "related to the creation, transfer, or retirement of capital" and

fall outside the scope of section 75-1.1); *White v. Thompson*, 364 N.C. 47, 48 (2010) (stating that section 75-1.1 does not "regulate purely internal business operations").[4] Because section 75-1.1 does not regulate the conduct pleaded in the complaint, the Court grants Omni's and Alshalabi's motions to dismiss the section 75-1.1 claim.

## D. Breach of Fiduciary Duty

40.     Plaintiffs allege that Alshalabi, in his role as member and manager of Omni, owed them a fiduciary duty and breached that duty.  Alshalabi has moved to dismiss the claim on the ground that the complaint does not sufficiently allege a fiduciary relationship.  (*See* Alshalabi & Crestar Br. in Supp. 5–10.)

41.     An "essential element" of a claim for breach of fiduciary duty "is the existence of a fiduciary relationship." *Azure Dolphin*, 2017 NCBC LEXIS 90, at *23 (citations omitted).  It is well settled that LLC managers do not owe fiduciary duties "to individual members," and LLC members "do not owe a fiduciary duty to each other." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74 (2009) (citations omitted).  A narrow exception is that the "holder of a majority interest who exercises control over the LLC owes a fiduciary duty to the minority interest members."

---

[4] *See also, e.g.*, *Slattery v. AppyCity, LLC*, 2021 NCBC LEXIS 24, at *23 (N.C. Super. Ct. Mar. 24, 2021) (dismissing section 75-1.1 claim when "[a]t bottom, [plaintiff's] UDTP claim arises from his purchase of an ownership interest in an LLC, AppyCity—a transaction which [plaintiff] repeatedly characterizes in the Amended Complaint as an investment"); *LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *10–11 (N.C. Super. Ct. Oct. 9, 2018) (stating that allegations about disputes over ownership rights, failures to perform obligations under Chapter 57D or an operating agreement, and misuse or misappropriation of investments are all considered internal company affairs); *Bickley v. Fordin*, 258 N.C. App. 1, 4–6 (2018); *JS Real Estate Invs. LLC v. Gee Real Estate, LLC*, 2017 NCBC LEXIS 104, at *21 (N.C. Super. Ct. Nov. 9, 2017); *Saw Plastic, LLC v. Sturrus*, 2017 NCBC LEXIS 76, at *14–18 (N.C. Super. Ct. Aug. 25, 2017); *Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *2–11, *45–46 (N.C. Super. Ct. Feb. 27, 2015).

*Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *17 (N.C. Super. Ct. June 19, 2019) (citations and quotation marks omitted); *see also Kaplan*, 196 N.C. App. at 473. But to assert that basis for a breach of fiduciary duty claim, the complaint must sufficiently allege both majority membership as well as domination and control. *See Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *25–26 (N.C. Super. Ct. Oct. 21, 2016).

42. In their opposition brief, Plaintiffs contend that Alshalabi has "complete control" over Omni. (Opp'n to Alshalabi & Crestar MTD 7.) But the complaint does not go that far. It alleges simply that there was a fiduciary relationship between Plaintiffs and Alshalabi "as fellow members of Omni and Crestar and, in addition, by reason of [Alshalabi's] position as Manager of Omni and Crestar." (Compl. ¶ 71.) There are no allegations that Alshalabi is Omni's or Crestar's majority member. And Alshalabi's role as a member or manager is insufficient on its own to impose a fiduciary duty on him. The allegations, thus, are "facially insufficient to plead the existence of a fiduciary relationship." *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *18 (N.C. Super. Ct. Mar. 15, 2019). The Court therefore grants Alshalabi's motion to dismiss the claim for breach of fiduciary duty.

### E. Accounting

43. Finally, Plaintiffs assert a claim for "an accounting from each Defendant." (Compl. ¶ 51.) During briefing, Plaintiffs clarified that this is a claim for equitable, not statutory, accounting. (*See* Opp'n to Omni MTD 6.) Defendants have moved to

dismiss the claim, arguing that Plaintiffs have failed to show that they lack an adequate remedy at law. (*See* Omni Br. in Supp. 7–10.)

44. Equitable accounting is a remedy that "may be available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." *Miller v. Burlington Chem. Co., LLC*, 2017 NCBC LEXIS 6, at *36 (N.C. Super. Ct. Jan. 27, 2017) (quoting *Mkt. Choice, Inc. v. New Eng. Coffee Co.*, No. 5:08-CV-90, 2009 U.S. Dist. LEXIS 7362, at *35–36 (W.D.N.C. Aug. 17, 2009)); *see also Higgins v. Synergy Coverages Sols., LLC*, 2020 NCBC LEXIS 6, at *61 (N.C. Super. Ct. Jan. 15, 2020). It is a remedy, not an independent cause of action, and is available only if the plaintiff first shows that he lacks an adequate remedy at law and alleges facts in the complaint to that effect. *See Gottfried v. Covington*, 2014 NCBC LEXIS 26, at *16–17 (N.C. Super. Ct. June 25, 2014).

45. Plaintiffs claim to be members of Omni. (*See, e.g.*, Compl. ¶¶ 15–17, 20, 23.) Members have statutory inspection rights under N.C.G.S. § 57D-3-04. The complaint alleges that Plaintiffs made a written demand on Alshalabi for financial statements and other documents but that Omni and Alshalabi refused to produce any documents. (*See* Compl. ¶ 10.) Because their demand was rebuffed, Plaintiffs contend that their statutory inspection right is inadequate. Yet they concede that their demand "did not comport with Chapter 57D." (Opp'n to Omni MTD 7.) Plaintiffs' failure to comply with the statute does not render their statutory remedy inadequate. Because Plaintiffs have not shown that their statutory inspection right is inadequate, the

presence of that remedy precludes their request for an equitable accounting of Omni. *See Raja v. Patel*, 2017 NCBC LEXIS 25, at \*19–20 (N.C. Super. Ct. Mar. 23, 2017) (granting motion to dismiss).

46. Turning to Crestar and Alshalabi, the complaint does not allege that Plaintiffs lack an adequate remedy at law as to Crestar or Alshalabi. Plaintiffs' briefs do not address the issue either. Because Plaintiffs have failed to meet the pleading standard and have offered no response to this argument, dismissal is warranted. *See also Glover Constr. Co. v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 76, at \*23 (N.C. Super. Ct. June 18, 2020) (granting motion as uncontested when response brief did not respond to moving party's argument).

47. The Court therefore grants Defendants' motions to dismiss the claim for equitable accounting.

IV.
CONCLUSION

48. For all these reasons, the Court **ORDERS** as follows.

49. The Court **GRANTS** Defendants' motions to dismiss the claim for declaratory judgment as to the first requested declaration to the extent they seek joinder of Clio Laboratories, LLC as a necessary party but otherwise denies the motions as to the first requested declaration without prejudice. The Court **ORDERS** that Plaintiffs shall join Clio Laboratories, LLC as a defendant to this action within thirty days of the entry of this Order and Opinion. If Clio is not joined within thirty days, the Court will dismiss the relevant portion of declaration one of Plaintiffs' claim for declaratory judgment without prejudice.

50. Omni's motion to dismiss is further **GRANTED in part** and **DENIED in part**:

    a. The Court **GRANTS** the motion to dismiss the claims against Omni for declaratory judgment as to the second, third, and fourth requested declarations; accounting; unfair or deceptive trade practices; and breach of fiduciary duty. The claims are dismissed without prejudice.

    b. In all other respects, the Court **DENIES** the motion.

51. Alshalabi and Crestar's motion to dismiss is further **GRANTED in part** and **DENIED in part**:

    a. The Court **GRANTS** the motion to dismiss the claims against Alshalabi for declaratory judgment as to the second, third, and fourth requested declarations; accounting; unfair or deceptive trade practices; and breach of fiduciary duty. The claims are dismissed without prejudice.

    b. The Court **GRANTS** the motion to dismiss the claims against Crestar for a declaratory judgment as to the second, third, and fourth requested declarations; accounting; breach of contract; unfair or deceptive trade practices; and breach of fiduciary duty. The claims are dismissed without prejudice.

    c. In all other respects, the Court **DENIES** the motion.

52. Consistent with the parties' first case management report, (ECF No. 14 § 3(f)), the Court **ORDERS** that the parties shall conduct a second case management meeting within ten days of the entry of this Order and Opinion and shall submit a

joint case management report and proposed case management order fifteen days thereafter.  *See* Business Court Rules 9.1, 9.2.

**SO ORDERED**, this the 29th day of April, 2021.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases
